UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RAFIEEK GRAHAM,** | Civil Action No. 23-2088 (SDW-AME) |
| Plaintiff, | MEMORANDUM OPINION |
| v. | |
| **DR. M. OJELADE, et al.,** | |
| Defendants. | |

**IT APPEARING THAT:**

1. On or about April 13, 2023, Plaintiff Rafieek Graham, a civilly committed sexually violent predator ("SVP") confined in the East Jersey State Prison, Ad. Seg. Unit, S.T.U. ("STU EJSP") in Avenel, New Jersey, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983. (ECF No. 1).[1] Plaintiff also filed an application to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915(a). (ECF No. 1-1).

2. On April 21, 2023, this Court granted Plaintiff's IFP application. (ECF No. 4).

3. On April 24, 2023, Plaintiff filed a supplement to his complaint,[2] adding Dr. Mrs. Grace ("Dr. Grace") as a defendant in this matter. (ECF No. 5).

---

[1] Plaintiff alleges he is a civilly committed person. (ECF No. 1). This Court takes judicial notice that STU EJSP houses persons who have been civilly committed under the New Jersey Sexually Violent Predators Act. *See* N.J.A.C. § 10A:35–1.2 *et seq.*

[2] Plaintiff titled his pleading "Amending Complaint." (ECF No. 5). Plaintiff's cover letter indicates that he intended only to supplement his original complaint by adding Dr. Grace as a defendant. (ECF No. 5-1). Therefore, pursuant to Federal Rule of Civil Procedure 12(d), the complaint, as supplemented, consists of the pleadings filed under Docket Entry Nos. 1 and 5.

1

3. Because Plaintiff has been granted *in forma pauperis* status, this Court is required to screen his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

4. In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, a plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

5. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is

liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

6. The defendants to the complaint, as supplemented, are employed at STU EJSP, including Doreen Stanzione, Acting Director (DOH/DHS), and the "Medical Defendants" including STU Nurse Rosalyn, Dr. M. Ojelade, and Dr. Grace, each sued in their individual and official capacities for damages and injunctive relief. (ECF Nos. 1 and 5).

7. Plaintiff makes the following allegations in his complaint. (ECF Nos. 1 and 5). Plaintiff was a civilly committed person confined in STU EJSP on March 31, 2023. Around 3:00 a.m., he began feeling numb in the left side of his body. Several hours later, Plaintiff reported his symptoms to the Medical Defendants, who diagnosed him with high blood pressure of 155, and treated him with Motrin. Plaintiff's feeling of numbness continued, and he developed shortness of breath. Dr. Ojelade told Plaintiff to walk on the treadmill, but when Plaintiff did so, his shortness of breath worsened. At 2:30 p.m., Plaintiff reported to work in the kitchen. He felt light-headed and weak. Plaintiff returned to the medical unit. His blood pressure had increased to 177, and his symptoms had worsened. Therefore, he was sent to J.F.K. Hospital by ambulance. At the hospital, Plaintiff was informed that he had a stroke caused by a blood clot, and that he was lucky they caught it in time.

8. Plaintiff alleges that at 2:45 p.m. on March 31, 2023, Senior Corrections Officer Long notified most of the units at STU EJSP that the Department of Corrections ("DOC") recently had to rush several residents to the hospital after having strokes that were misdiagnosed.  Plaintiff identified two of those residents by name.  Based on this alleged pattern of misdiagnosis, Plaintiff contends the defendants were not only negligent, but they were deliberately indifferent to the health and safety of residents who had stroke symptoms.  The DOC never informed the DOH [Department of Health] or the DHS [Department of Human Services] about Plaintiff's stroke because they wanted to keep the problem "in-house."  Acting Director Stanzione "always states" that she and her staff do not get involved in how the DOC and "medical" run the STU.  (ECF No. 1 at 12).  Plaintiff brings claims of medical malpractice and cruel and unusual punishment in violation of the Eighth Amendment against Defendants Nurse Rosalyn, Dr. Ojelade and Dr. Grace for misdiagnosing him.  He alleges Defendant Doreen Stanzione is liable for failing to investigate why so many STU residents were misdiagnosed when they had strokes.  Plaintiff required physical therapy to overcome the effects of having a stroke.

9. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).  "A civilly committed person has the right to adequate medical care in detention…." *Manasco v. Rogers*, 337 F. App'x 145, 150 (3d Cir. 2009) (citing *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982)).  The Third Circuit has not determined, in a published case, the standard that applies to constitutional claims brought by civilly committed sexually violent predators.  *See*, *Aruanno v. Johnson*, 683 F. App'x. 172, 175 n.1 (3d Cir. 2017) ("It is not clear that the rights of sexually violent predators are coextensive with others who are civilly detained.")

10. In *Youngberg*, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment created substantive rights for those persons involuntarily committed to a state institution for mentally retarded persons. *Id.* at 309. The Court held that it is unconstitutional to confine those who are involuntarily committed in unsafe conditions. *Id.* at 315-16. The liberty interest in safety includes adequate medical care; however, the liberty interest is not absolute. *Id.* at 315, 319-20. The proper standard for determining a constitutional violation requires balancing the individual's liberty interest with the State's interest in restraining individual liberty. *Id.* at 320. Where the individuals are pretrial detainees who have not been convicted of a crime, their liberty interests are limited to restrictions that are reasonably related to legitimate government objectives and not tantamount to punishment. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)). For those civilly committed for mental illness, "[t]he proper balance between the legitimate interests of the State and the rights of the involuntarily committed to reasonable conditions of safety" results in a protected interest in reasonable care and safety, subject to the presumption of correctness of the decision of an appropriate professional who "make[s] decisions with respect to a number of residents with widely varying needs and problems in the course of a normal day." *Id.* at 324.

11. Whether the Fourteenth Amendment liberty interest for civilly committed SVPs is the same as that of pretrial detainees or the same as that of mentally retarded persons involuntarily committed to a state institution, Plaintiff's substantive Due Process claims fail. Medical claims by pretrial detainees are analyzed under the same standard as that of prisoners under the Eighth Amendment. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (citing *e.g.*, *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987)). To establish violation of the right to adequate medical care, a plaintiff must show a serious medical need, and acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* (citing *Rouse v. Plantier*, 182

F.3d 192, 197 (3d Cir. 1999)). "As long as a physician exercises professional judgment, his or her behavior does not violate a [pretrial] detainee's constitutional rights." *Moore v. Luffey*, 767 F. App'x 335, 340 (3d Cir. 2019) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)). Similarly, "[m]ere negligence cannot trigger due process protection" for those civilly committed as mentally retarded. *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1146 (3d Cir. 1990) "Professional judgment, like recklessness and gross negligence, generally falls somewhere between simple negligence and intentional misconduct." *Id.*

12. Plaintiff alleges Nurse Rosalyn, Dr. Ojelade and Dr. Grace misdiagnosed him with high blood pressure and failed to recognize that he was having a stroke. Plaintiff, however, also alleges that his blood pressure was high, 155, when he first visited Nurse Rosalyn, Dr. Ojelade and Dr. Grace in the morning of March 31, 2023. Therefore, Plaintiff has alleged facts consistent with the Medical Defendants' exercise of their professional judgment. Even if the greater liberty interest described in *Youngberg* is applied here, a professional's judgment is entitled to a presumption of correctness. The Court will dismiss the Fourteenth Amendment claims against the Medical Defendants without prejudice. To overcome this presumption, Plaintiff must plead facts indicating not only that defendants misdiagnosed him, but that they violated professional standards of care. *Moore*, 767 F. App'x at 340 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[T]he professional judgment standard [in *Youngberg*] requires only that a plaintiff show that "'[a] decision ... is ... a substantial departure from accepted professional judgment, practice, or standards.'" *Shaw by Strain*, 920 F.2d at 1145 (3d Cir. 1990).

13. Plaintiff further alleges Assistant Director Doreen Stanzione failed to investigate why so many STU residents were misdiagnosed when they had strokes. This claim is based on a theory of supervisory liability.

> [T]here are two theories of supervisory liability,' one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (second alteration in original).

*Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n. 5 (3d Cir. 2010). Plaintiff has not alleged sufficient facts to state a plausible claim that Assistant Director Stanzione's alleged failure to investigate multiple instances of misdiagnosis caused the Medical Defendants to fail to exercise their professional judgment in diagnosing Plaintiff's symptoms. Therefore, the Court will dismiss the claims against Assistant Director Stanzione without prejudice. Because Plaintiff has not alleged diversity jurisdiction and failed to state a claim under § 1983 or any other federal law, this Court will not exercise supplemental jurisdiction over Plaintiff's state law medical malpractice claims[3] at this time. *See*, 28 U.S.C. § 1367(a)

14. In conclusion, this Court will dismiss Plaintiff's complaint without prejudice for failure to state a claim upon which relief may be granted. Plaintiff is granted leave to file an amended complaint.

An appropriate order follows.

Dated: June 7, 2023

Hon. Susan D. Wigenton,
United States District Judge

---

[3] The New Jersey Tort Claims Act governs personal injury claims brought against public entities and employees. N.J. Stat. Ann. § 59:1.1 *et seq*.